**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Daniel C. COLE and Daniel R. Cole,**
**Defendants-Appellants.**

**No. 80–7543.**

United States Court of Appeals,
Fifth Circuit.*
Unit B

March 11, 1982.

Edward T. M. Garland, Steven H. Sadow, Atlanta, Ga., for Daniel C. Cole.

William R. Gignilliat, Atlanta, Ga. (Court-appointed), for Daniel R. Cole.

Charles S. Saphos, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before HILL, Circuit Judge, SMITH **, Judge, and HENDERSON, Circuit Judge.

SMITH, Judge:

Daniel C. Cole and his son, Daniel R. Cole,[1] were indicted on February 12, 1980: The twenty-six count indictment alleged the use of the mails to defraud insurance companies in violation of 18 U.S.C. § 1341 (1976) and conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 (1976).[2]

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

** Honorable Edward S. Smith, Judge for the U.S. Court of Claims, sitting by designation.

1. Another son of Daniel C. Cole, Ronnie D. Cole, was also indicted but he was acquitted of all charges.

2. Daniel C. Cole was found guilty on counts 1–9, 11, 13–16, and 18–22. Daniel R. Cole was found guilty on counts 1, 18, and 19. Both were sentenced to 5-year concurrent jail terms for each count but Daniel R. Cole had to serve only 6 months in jail to be followed by a 5-year probation period.

Defendants were charged with participating in two separate schemes. The first scheme involved a conspiracy to defraud a finance company, American Credit Company (American Credit), which loaned funds to the customers of defendants' used car business, Cole and Sons Used Cars. The agreement between defendants and the finance company made defendants liable for defaulting customers' debts. In order to limit their losses, defendants arranged to have the defaulters' cars either destroyed or stolen. Defendants then used the United States mails to file fraudulent insurance claims on the respective automobiles in order to obtain funds for the payments due American Credit.

Daniel C. Cole was the only defendant charged with participating in the second scheme. This scheme involved two real estate transactions. In the first transaction, defendant had Mr. Henry Knight purchase a house from defendant, insure it, and live in it for several months. While Mr. Knight was away on vacation, defendant had the house destroyed by fire. Mr. Knight filed an insurance claim and gave defendant the insurance proceeds. In the second transaction, defendant attempted to sell a house for Mr. Hugh Frady. When he was unable to obtain a buyer, defendant and Mr. Frady agreed to destroy the house with Mr. Frady getting the insurance proceeds and defendant getting the land on which the house was located. This scheme failed, however, because the house was only partially destroyed and the insurance company paid to have it repaired.[3]

Defendants base their appeal on the failure of the trial judge to allow three of defendants' witnesses to testify before the jury as to alleged intimidation of these witnesses by the local police and the Alcohol, Tobacco, and Firearms (ATF) agents who conducted the federal investigation of defendants' case. Defendants claim that those witnesses' testimony would be beneficial in the development of their defense—a defense which they refer to as a "spoliation defense." Defendants explained to the trial judge that the witnesses' testimony would enable defendants to demonstrate "an effort [by investigative agents of the Government] to influence testimony [and that effort] * * * may be considered by the jury as to the merits of the [Government's] case and an inference may be drawn as to the weakness of the Government's case from that conduct."[4] For the reasons stated below, we hold that the trial judge did not err in refusing to allow this testimony to be presented to the jury.

## I.

■ In reviewing a district court's decision on the admissibility of evidence, we are guided by the rule that a "district court has wide discretion in determining relevance and materiality and its ruling should not be disturbed in the absence of an abuse of discretion."[5] However, this rule is tempered by the corollary that "where the proffered evidence is of substantial probative value, and will not tend to prejudice or to confuse, all doubt should be resolved in favor of admissibility."[6]

Defendants base their spoliation defense on language in two cases: *United States v. Remington*[7] and *United States v. Graham.*[8]

In *Remington*, the defendant offered to prove that the Government had used the grand jury process to intimidate certain Government witnesses. The defense there-

---

3. Daniel C. Cole was also found guilty of violating 18 U.S.C. § 844(h)(1) (1976)—use of an explosive to commit a felony. This charge was made because the gasoline used to burn down the Frady home exploded when ignited.

4. Trial record at 1601.

5. *United States v. Garr*, 461 F.2d 487, 489–90 (5th Cir.), *cert. denied*, 409 U.S. 880, 93 S.Ct. 170, 34 L.Ed.2d 135 (1972).

6. *Holt v. United States*, 342 F.2d 163, 166 (5th Cir. 1965).

7. *United States v. Remington*, 191 F.2d 246 (2d Cir. 1951), *cert. denied*, 343 U.S. 907, 72 S.Ct. 580, 96 L.Ed. 1325 (1952).

8. *United States v. Graham*, 102 F.2d 436 (2d Cir.), *cert. denied*, 307 U.S. 643, 59 S.Ct. 1041, 83 L.Ed. 1524 (1939).

fore moved to suppress those witnesses' testimony. The court held that the defense's only remedy in that situation was to examine about possible intimidation all Government witnesses who testified at the trial.

In *Graham*, the court considered whether the trial judge abused his discretion by allowing the prosecutor, through an extended direct examination, to discredit a material Government witness who claimed that the Government induced him into giving perjured testimony. The court held that the trial judge had acted properly because if the jury had believed that the Government had contrived to obtain false evidence against defendants, they "would then have had reason enough for concluding that the prosecutor was conscious that his case against the appellants was lacking in merit and that they were innocent men unjustly accused." [9]

While defendants claim that the testimony of their three witnesses should have been allowed in order to develop a spoliation defense, we believe that only Michael Moon's testimony is in any way appropriate.[10]

Mr. Moon began his testimony by stating that he had no knowledge of the crimes with which defendants were charged. After the Government questioned the relevancy of the witness' testimony, the defense made a proffer of Mr. Moon's testimony. Mr. Moon again stated that he was unaware of any facts relevant to the charges made against defendants. Mr. Moon stated that an investigator had told him, "If you help me on these cars and tell me the truth about them, I can help you [with your problems with the police] in Madison County." [11] Mr. Moon further stated that the investigator repeatedly attempted to have him testify against Daniel C. Cole.

After hearing the arguments of counsel and considering the precedents cited, the trial judge held that, under the balancing test of Rule 403 of the Federal Rules of Evidence, Mr. Moon's testimony would not be presented to the jury. The trial judge based this decision on four factors. First, the testimony was of questionable relevance since Mr. Moon was not a witness to any of the crimes charged. Second, the testimony would open the door for the Government to get in evidence which the court had earlier excluded. Third, the testimony was repetitious and cumulative since the defense had questioned several other witnesses about possible Government intimidation. Fourth, and most importantly, it would divert the jury's attention to the collateral issue of whether the Government had properly conducted its questioning of witnesses who had no knowledge of the crimes with which defendants were finally charged.

This case does not fit within the language of either *Remington* or *Graham*. As opposed to *Remington* and *Graham*, defendants here were not denied any relevant testimony since none of their prospective witnesses had any knowledge of the crimes in question. Also, defendants here had full opportunity to question all of the witnesses against them about any possible Government intimidation. In fact, some of the witnesses questioned gave certain indications that some pressuring by the police had taken place.

 The trial judge gave full consideration to defendants' arguments and determined that Mr. Moon's testimony was irrelevant or, if relevant, unnecessarily opened up collateral issues which could have either improperly harmed defendants or sent the trial down a sidetrack. Evidence in criminal trials must be "strictly relevant to the

---

9. *Id.* at 442.

10. Billy Joe Swafford testified that the police only coerced him into taking a polygraph test, not into testifying against defendants. This coercion, if it took place, was clearly collateral to the Government's case against defendants. Also Carroll Fowler testified that the only police intimidation he received was by a county

detective in 1975, several years before the relevant investigation. Defendants were unable to offer the trial judge any proof that the questioned actions by the detective had any bearing on the subsequent ATF investigation.

11. Trial record at 1598.

particular offense charged." [12] Furthermore, the trial judge "is given broad discretion to weigh * * * the possible prejudice which might ensue in opening up collateral matters." [13] If defendants had been allowed to place Mr. Moon's testimony before the jury, the court, as in *Graham*, would have had to allow the Government the opportunity to refute the inference that it had participated in a frame-up of defendants. For the reasons stated above, we find no error in the trial judge's ruling and, therefore, defendants' convictions are

AFFIRMED.

---

**12.** *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949).

**13.** *United States v. Qualls*, 500 F.2d 1238, 1240 (8th Cir.), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974).