**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Bernardo BETANCOURT, Bernardo Sando, Norman Gerwitz, Gene Chekanow, Defendants-Appellants.**

No. 83–5087.

United States Court of Appeals,
Eleventh Circuit.

June 18, 1984.

Rehearings and Rehearing En Banc
Denied July 30, 1984.

Rehearing Denied Aug. 20, 1984.

Sophie De Mayo, Miami, Fla., for Betancourt.

Robyn Hermann, Asst. Federal Public Defender, Miami, Fla., for Sando.

Louis Vernell, North Miami Beach, Fla., James G. Roth, Miami Beach, Fla., for Gerwitz.

Donald I. Bierman, Benedict P. Kuehne, Bierman, Sonnett, Shohat & Sale, Miami, Fla., for Chekanow.

Stanley Marcus, U.S. Atty., and Linda Collins Hertz and William M. Norris, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY and ANDERSON, Circuit Judges, and MARKEY *, Chief Judge of the Federal Circuit.

FAY, Circuit Judge:

Appellants Bernardo Betancourt, Gene Chekanow, Norman Gerwitz and Bernardo Sando were charged in a seven count indictment alleging violations of 21 U.S.C. §§ 841(a)(1), 846 and 848.[1] After a jury trial they were found guilty on all counts. Each appellant challenges his convictions on several grounds. We find the trial court's only error was its communication with the jury without notice to counsel but this error was harmless. We affirm each appellant's conviction on all counts.

## I. FACTS

In July, 1981, appellants Chekanow and Gerwitz took over a clinic in North Miami called Dade Obesity and Stress Clinic. In November they opened a second clinic in the Galloway Medical Center. In early 1982, they opened a third clinic, next door to the North Miami clinic and called it United Medical Services. All three clinics ostensibly treated obesity and stress. Appellants Betancourt and Sando were the doctors at the clinics.

All three clinics had the same procedure for treating patients.[2] Each patient would initially fill out a medical history, a psychological profile and have his blood taken. A therapist would interview the patient and

---

* Honorable Howard T. Markey, Chief Judge, U.S. Court of Appeals for the Federal Circuit, sitting by designation.

1. Appellants Betancourt and Sando were charged with one count of unlawfully dispensing methaqualone and with conspiracy to unlawfully dispense methaqualone. Chekanow and Gerwitz were charged with four counts of unlawfully dispensing and aiding and abetting the unlawful dispensing of methaqualone, with conspiracy to unlawfully dispense methaqua-

lone and with supervising a continuing criminal enterprise.

2. Special Agent Mark Trouville of the Drug Enforcement Administration went to the clinics as a patient in an undercover capacity on four separate occasions. The same procedure was used all four times. This testimony was also corroborated with the testimony of other patients.

check his vital signs. Then, he would meet the doctor, pay $100 and get a prescription for 45 tablets of methaqualone. On subsequent visits the patient would not have to fill out any forms or have his blood checked. If a patient returned to the clinic within thirty days, clinic personnel would send him to one of the other clinics to get another prescription. The three clinics had a total of 6,745 patient visits and 99.64% received prescriptions for 45 tablets of methaqualone. R.Vol. 17 at 1311.

Appellants raise six issues on appeal: (1) whether the district court erred in denying their motions to suppress due to defective search warrants? (2) whether the district court erred in holding the trial in West Palm Beach? (3) whether the district court erred in refusing to exclude prejudicial medical testimony? (4) whether the evidence was sufficient to sustain the convictions? (5) whether the prosecutor improperly commented on appellants' failure to testify? and (6) whether the appellants' constitutional rights were violated due to communications between the judge and the jury without appellants' counsel being notified or present?

## II. SEARCH WARRANTS

■ On May 18, 1982, the government searched appellants' clinics and seized records pursuant to two search warrants issued by a magistrate. Each warrant and supporting affidavit were identical except that one related to records in the office of Dade Obesity and Stress Clinic and the other related to records in the office of United Medical Services, Inc. Appellants challenge the warrants on several grounds.[3]

### A. Probable Cause

■ The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested. *Zurcher v. Stanford Daily News*, 436 U.S. 547, 558, 98 S.Ct. 1970, 1977, 56 L.Ed.2d 525 (1978). This circuit has stated that probable cause exists "if facts within the magistrate's knowledge and of which he had reasonably trustworthy information would warrant a man of reasonable caution in the belief that a crime was committed and that evidence is at the place to be searched." *United States v. Strauss*, 678 F.2d 886, 892 (11th Cir.1982). A magistrate's decision that probable cause exists is conclusive absent arbitrariness. *United States v. Long*, 674 F.2d 848, 852 (11th Cir.1982).

■ The magistrate in this case had enough information to conclude that a search warrant should be issued. The magistrate had an affidavit from Emilio Cheves, a compliance investigator with the Drug Enforcement Administration, describing Cheves' interview for a job at one of the clinics. Cheves was told that his job would be to listen to patients' hearts and write prescriptions for methaqualone. This information was corroborated by Special Agent Mark R. Trouville who had gone to the clinic in an undercover capacity on four occasions. Each time he paid $100 and received a prescription for forty-five tablets of methaqualone. On the basis of this information, the magistrate could, without arbitrariness, find probable cause.

### B. Particularity of the Description

■ The Fourth Amendment requires that warrants "particularly describe the place to be searched, and the persons or things to be seized." This requirement of particularity prevents "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), but elaborate specificity is unnecessary. The description is considered "sufficiently particular when it enables the

---

**3.** We will not address the argument made by appellants that the affidavit contained an intentional false statement since we find it without merit.

searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Cook*, 657 F.2d 730, 733 (5th Cir.1981). The standard "is one of practical accuracy rather than technical nicety." *United States v. Johnson*, 541 F.2d 1311, 1313 (8th Cir.1976).

■ The property in this case was described in each warrant as follows:

all financial records, including but not limited to all documents showing source and amount of income and disbursement, and patient records, limited to those records showing the dates of patient visits, all diagnostic tests performed and results obtained, diagnoses made, medications prescribed and the name of the diagnosing physician, from on or about June 15, 1981 [January 1, 1982], to the present which are evidence of violations of Title 21, United States Codes, Section 841(a)(1).

This description prevented a general search and was as specific as the circumstances and nature of the activity permitted. *See, United States v. Slocum*, 708 F.2d 587 (11th Cir.1983).

### C. Reliability of Informant

■ Appellants also assert that the information relied on by the court to establish probable cause did not meet the test for reliability established by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We disagree. In *Illinois v. Gates*, the Supreme Court abandoned the prior, rigid "two-pronged test" of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and established instead a flexible standard. Courts should now use a totality of the circumstances analysis to determine whether an informant's tip establishes probable cause. *Id.* 103 S.Ct. at 2332. Under the new test the issuing magistrate must only "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying [the] hearsay information," *id.*, there is probable cause to issue the search warrant. Reviewing courts must only "ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id., quoting Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960).

All of the circumstances in this case indicate probable cause existed to issue the warrant. The hearsay information offered by the informant was corroborated by independent evidence. The magistrate had substantial basis for concluding that probable cause existed.

### III. VENUE

■ This case was first noticed for trial in Miami on August 2, 1982. Chekanow filed a motion for continuance and trial was rescheduled for Miami on September 20, 1982. Next, Gerwitz moved for a continuance and the case was set for trial in Fort Lauderdale on October 18, 1982. Sando then moved for a continuance and trial this time was scheduled for November 2, 1983, in West Palm Beach. Betancourt then moved for a continuance but the district judge denied the motion and trial was held in West Palm Beach. Appellants now claim that holding the trial in the Northern Division of the district, rather than in the Southern Division where the offense occurred, violated their rights under Fed.R. Crim.P. 18. We disagree.

Prior to 1966 Rule 18 required trial in the division in which the offense was committed.[4] The 1966 amendment eliminated the

---

4. Prior to July 1, 1966, Fed.R.Crim.P. 18 provided:

Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed, but if the district consists of two or more divisions the trial shall be had in a division in which the offense was committed.

The amended Rule 18, effective July 1, 1966, read as follows:

Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed.

requirement of trial within a division and vested discretion instead in the court "to fix the place of trial at any place within the *district* with due regard to the convenience of the defendant and his witnesses." Advisory Committee Notes, Fed.R.Crim.P. 18 1966 Amendment. (emphasis added). The Fifth Circuit narrowly construed the rule's new language in *Dupoint v. United States*, 388 F.2d 39 (5th Cir.1968). The court concluded that trial was not allowed in a division other than that in which the offense was committed unless the trial judge found that it was not convenient to the defendant or his witnesses. *Id.* at 39. It was reversible error to change venue for the convenience of the prosecution.

■ The Speedy Trial Act of 1974 added another problem to the 1966 rule. The Act provided:

> In any case involving a defendant charged with an offense, the appropriate judicial officer, at the earliest practicable time, shall, after consultation with the counsel for the defendant and the attorney for the Government, set the case for trial on a day certain, or list it for trial on a weekly or other short-term trial calendar at a place within the judicial district, so as to assure a speedy trial.

18 U.S.C. § 3161(a).

This provision was intended to "permit the trial of a case at any place within the judicial district." H.R.Rep. No. 93–1508, 93d Cong., 2d Sess. 29 (1974) U.S.Code Cong. & Admin.News 1974, p. 7401. The Act did not differentiate between the convenience of the prosecution or the defendant. Instead the term "judicial district" was used "in anticipation of problems which might occur in districts with statutory divisions, where it could be difficult to set trial outside the division." *Id.* The rule, therefore, was once more amended in 1979 to reconcile the Speedy Trial Act and the rule. The amendment left the setting of the place for trial within the discretion of the trial judge. But in exercising that discretion the judge must consider (1) the convenience of the defendant, (2) the convenience of the witnesses and (3) the prompt administration of justice.[5]

■ The trial judge did not abuse his discretion in holding this trial in West Palm Beach. The Sixth Amendment provides a defendant with the right to a trial "by an impartial jury of the State and district" where the crime was committed, but there is no constitutional right to trial within a division. *See United States v. Anderson*, 328 U.S. 699, 704, 705, 66 S.Ct. 1213, 1216, 1217, 90 L.Ed. 1529 (1946). A division of a federal judicial district is not a unit of venue in criminal cases. *United States v. James*, 528 F.2d 999, 1021 (5th Cir.), *cert. denied*, 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976). The trial had been set twice in Miami and once in Fort Lauderdale. Each time the trial was continued due to motions by the defendants. Our court is painfully aware of the problems in the Southern District of Florida. The Chief Justice had instituted a program of visiting judges to alleviate the overload of cases pending in the Southern District. These judges were using all of the available courtrooms in the Miami courthouse. It was impossible to find an empty courtroom in Miami.[6] The court did not abuse its discretion in changing venue in this case.

## IV. LEGITIMATE MEDICAL PURPOSE

Appellants were charged in the indictment with knowingly and intentionally distributing or dispensing a controlled substance not in the usual course of profes-

---

The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses.

**5.** Rule 18, as amended in 1979, now reads:
Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the

district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

**6.** This circuit had to move a scheduled Miami sitting to West Palm Beach due to the unavailability of a courtroom in Miami.

sional practice and not for legitimate medical purpose in violation of 21 U.S.C. § 841(a)(1) (1980). This section provides in part that:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally ... to ... distribute or dispense, a controlled substance ..."

21 U.S.C. § 841(a)(1).

The phrase "except as authorized by this subchapter" indicates that this law has certain exceptions. One of these is a limited exemption for doctors.

■ In order to lawfully possess or dispense a controlled substance a doctor must fulfill two requirements. He must be lawfully licensed to practice medicine and he must be registered by the Drug Enforcement Administration. Doctors that are registered are then authorized to possess, distribute or dispense controlled substances. However, they may do so only in the usual course of professional practice and for a legitimate medical purpose.[7] To assist the jury in establishing the usual course of professional practice and a legitimate medical purpose the government called two medical doctors to the stand. Appellants now urge that the district court erred in not excluding the doctors' testimony under Federal Rule of Evidence 403 [8] since its prejudicial effect outweighed its probative value. We disagree.

■ Rule 403 permits a trial court to exclude otherwise admissible evidence because the "probative value" of the evidence "is substantially outweighed by the danger of unfair prejudice." But Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence. *United States v. King,* 713 F.2d 627, 631 (11th Cir.1983). In criminal trials relevant evidence is inherently prejudicial. The rule permits exclusion only when unfair prejudice substantially outweighs probative value. *United States v. Thevis,* 665 F.2d 616, 633 (5th Cir.1982) (Unit B).[9]

■ The jury was told that the government had to prove that "... the defendants distributed or dispensed a controlled substance ... that they acted knowingly and intentionally, and ... that they did so other than for a legitimate medical purpose and in the usual course of their professional practice." R.Vol. 2 at 342. To reach its decision the jury needed medical testimony as to what the drug is, how it is properly used, how it can be abused and the medical profession's view of the drug. The trial judge did not abuse his discretion, *United States v. Cole,* 670 F.2d 35, 36 (5th Cir. 1982) (Unit B), in admitting the testimony of Dr. Wright and Dr. Morgan to help the jury establish the standard of medical practice.

## V. SUFFICIENCY OF THE EVIDENCE

■ Appellants argue that the evidence presented at trial was insufficient to support their convictions. Challenges to the sufficiency of the evidence are measured by the standard set out in *United States v. Bell,* 678 F.2d 547 (5th Cir. Unit B) (*en banc*), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The court in *Bell* stated:

> It is not necessary that the evidence exclude every reasonable hypothesis of in-

---

7. The Supreme Court in *United States v. Moore,* 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975) interpreted Section 841 and held that a physician could violate this Section if he exceeded the usual course of professional practice. The jury in *Moore* had been instructed that the doctor could not be convicted if he was only making "an honest effort" to prescribe for detoxification purposes in compliance with an accepted standard of medical practice. *Id.* at 142 n. 20, 96 S.Ct. at 345 n. 20. *See also, United States v. Blanton,* 730 F.2d 1425 (11th Cir.1984).

8. Federal Rule of Evidence 403 states:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

9. The Eleventh Circuit has adopted as binding precedent decisions of Unit B of the former Fifth Circuit. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

nocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*Id.* at 549.

In making this determination we must view the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and accept all reasonable inferences and credibility choices by the fact-finder, *United States v. Gonzalez,* 719 F.2d 1516, 1521–22 (11th Cir.1983). After a careful review of the record we find the evidence presented in this case was clearly sufficient to meet the government's burden.

## VI. PROSECUTOR'S CLOSING ARGUMENT

During closing argument Gerwitz' counsel made the following statement to the jury:

> To the contrary, if you remember when I was reading to Dr. Wright, and Dr. Morgan all of this extensive material that was published in various periodicals, the British Journal of Clinical Pharmacy, the Canadian Medical Journal, the journal of Clinical Pharmacology, the immense number—not immense. Substantial number of articles which I read to Dr. Wright, and Dr. Morgan, each one, each one of these articles establishing, without any question, the total affect of this, of this drug methaqualone.

R. Vol. XIX at 1822.

The prosecutor responded:

> Now, just as you get the rest of the story when you have a live witness on the stand where you can have the cross examination, you listened to the testimony of two doctors in this case, Dr. Wright, who is the medical examiner for Broward County; Dr. Morgan, who works with additional control with South

Miami Hospital. Those doctors took the stand, and were subject to cross examination. When it was all said and done, they said Quaalude is not a drug which doctor should prescribe in the ordinary course of medical practice, and should not be prescribe for any kind of a chronic condition. Did we hear any doctor who said, hey, Quaaludes are great. Did we hear any of the doctors who wrote these studies that Mr. Vernell is talking about? No. We didn't hear any testimony. We have Xerox copies of a throw away type.[10]

Appellants assert that the prosecutor's statement was an improper comment on appellants' failure to testify. We disagree.

 Convictions can be overturned where a comment on a defendant's exercise of his right to remain silent, either by the prosecutor or by counsel for a co-defendant, impairs the integrity of that right. *See, United States v. Aguiar,* 610 F.2d 1296, 1302 (5th Cir.1980), *cert. denied,* 449 U.S. 827, 101 S.Ct. 91, 66 L.Ed.2d 31 (1981). However, not every statement is an impermissible comment on silence. The standard for determining if the comment was impermissible is "whether the statement was manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of an accused to testify." *United States v. Dearden,* 546 F.2d 622, 625 (5th Cir.), *cert. denied,* 434 U.S. 902, 98 S.Ct. 295, 54 L.Ed.2d 188 (1977). In making this determination the court must "look to the context in which the statement was made ... to determine the manifest intention which prompted it and its natural and necessary impact upon the jury." *United States v. Forrest,* 620 F.2d 446, 455 (5th Cir.1980), *quoting Samuels v. United States,* 398 F.2d 964, 967 (5th Cir.), *cert. denied,* 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969).

---

**10.** Dr. Wright had testified that the articles used by counsel were pamphlets mailed to his office and financed by the drug companies. He re-ferred to them as "throw aways." R. Vol. XIX at 1839.

The statement in this case was clearly not intended, nor would a jury rationally construe it, to be a comment on silence. The statement was an attempt by the prosecution to show the ineffectiveness of appellants' efforts to rebut the government's medical testimony.[11] The prosecutor did not improperly comment on the appellants' failure to testify.

## VII. COMMUNICATION WITH JURY

During deliberations, the jury sent three notes to the trial judge asking for supplemental information. Retired Judge William Campbell[12] answered the notes without prior notice to any counsel and outside of their presence. Appellants assert that this procedure violated their constitutional right to be present at every stage of the proceeding. Although we do not approve the procedure followed by the district judge, we find the error harmless.

In *Rogers v. United States*, 422 U.S. 35, 38, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975), the Supreme Court established the rule concerning the right of a defendant and his counsel to be present and participate in any discussion between the judge and the jury. The Court stated that the "orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties ... to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after rendering the verdict." *Id.* at 38, 95 S.Ct. at 2094, *quoting Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853 (1919). However, the *Rogers* opinion clearly indicated that in some circumstances the error can be harmless. *Rogers v. United States*, 422 U.S. at 40, 95 S.Ct. at 2095. This is such a case.

The court and the jury communicated three times outside the presence of counsel:

QUESTION: Can we find less than 4 defendants guilty of Count III?

COURT: Yes.

QUESTION: We need clarification as to conspiracy, (Count III) being a separate charge as stated in Indictment, or is "conspiracy" automatically included in Counts I and II?

COURT: Yes.

QUESTION: Is the jury allowed to request leniency for any defendant(s) if a guilty verdict is found on any count? If the answer is yes, how do we go about making such a request?

COURT: No.

R.Vol. IX at 1884–1885.

These were the only answers given to the jury by the judge.[13]

We do not approve of any unjustified communication between the court and the jury without notifying counsel and therefore do not approve the procedure followed by the trial judge in this case. But, in this case, the error was harmless. The jury had a complete copy of all charges in the jury room. They could refer back to the charges and find the answers they needed. The judge's answers to the questions were responsive and clearly stated the law. Appellants have not shown any error or prejudice. The error is harmless. *United States v. McDuffie*, 542 F.2d 236, 241 (5th Cir.1976). AFFIRMED.

---

11. The prosecutor's comment can also be considered proper under the fair reply doctrine. *See, United States v. Hiett*, 581 F.2d 1199, 1204 (5th Cir.1978).

12. Due to a prior scheduling conflict Judge Paine, the presiding trial judge, had to attend a meeting in Miami and requested that district judge William Campbell handle any matters in his absence. Judge Campbell is a retired district judge from the Northern District of Illinois.

13. The trial transcript indicated the judge's intention that the jury read particular pages of the instructions in conjunction with his responses to the questions. This information was never conveyed to the jury.