[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14175
Non-Argument Calendar
_____

D.C. Docket No. 0:18-cr-60047-BB-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAURA QUERALES RUSSA,
IVONNE RUSSA MOSQUEDA,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(March 25, 2020)

Before JORDAN, JILL PRYOR and NEWSOM, Circuit Judges.

PER CURIAM:

Ivonne Russa Mosqueda ("Mosqueda") and her daughter, Laura Querales

Russa ("Russa"), appeal their convictions for drug-related offenses, and Mosqueda appeals her sentence. Mosqueda challenges the district court's ruling that she could not join a codefendant's motion to suppress. She and Russa challenge the district court's decision to answer a jury question without their or their counsel's presence. The district court conceded error but found the error harmless; Russa and Mosqueda argue that the error was not harmless. Mosqueda further argues that her sentence was substantively unreasonable. After careful review, we affirm.

## I.     BACKGROUND[1]

A grand jury charged Mosqueda, Russa, and others with conspiracy to distribute anabolic steroids, a controlled substance, in violation of 21 U.S.C. § 846; possession of anabolic steroids with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and maintaining a drug-involved premises, in violation of 21 U.S.C. §856(a)(1). Both pled not guilty.

Before trial, codefendant Hunter Soodak moved to suppress evidence law enforcement obtained during a search of an apartment (the "Sheridan Street apartment") where the steroids were discovered. Soodak, Mosqueda, and Russa were at the Sheridan Street apartment when the search occurred. The district court held a hearing on the motion, during which Mosqueda's counsel, in Mosqueda's

---

[1] Because we write for the parties, who are familiar with the facts, we recount only the facts that are necessary to understand our disposition of this appeal.

absence, moved to join Soodak's motion.  The district court denied the motion, reasoning that Mosqueda had not filed a motion to suppress, was not present at the hearing to consent to join Soodak's motion, and had not filed a motion to adopt Soodak's motion.  Although Mosqueda still had time to file a motion to suppress before the pretrial motion deadline, she did not file one.

Several of Mosqueda's and Russa's codefendants—including, as relevant here, Hugo Urdaneta Galvis ("Galvis")—pled guilty.  Mosqueda and Russa together proceeded to a jury trial.  At trial, Broward County Sheriff's Office detective Justin Colon testified that he participated in a controlled delivery of a package to the Sheridan Street apartment.  After Russa accepted delivery of the package at the apartment, Colon conducted a protective sweep, where he encountered Mosqueda, among others.

Colon obtained a search warrant for the residence and recovered substances in pill and liquid form there.  Some of the substances were labeled with "known steroid names."  Doc. 346 at 18.[2]  Colon came to know the names of steroids through his training as a detective.  The drugs were discovered alongside injection needles, rubber gloves, empty packages with white powder residue, a scale, and a mortar and pestle.  Colon also found cardboard boxes filled with money, labeled with the names of some of the people found at the apartment on the day of the

---

[2] "Doc. #" refers to the numbered entry on the district court's docket.

3

search, including one labeled "Ivonne." *Id.* at 23. Colon sent the substances to a lab for testing. Two experts in forensic chemistry testified that the substances Colon obtained from the Sheridan Street apartment were anabolic steroids, all controlled substances.

After the close of the government's evidence, Mosqueda moved for a judgment of acquittal, arguing that the government had failed to show that she knew the substances were controlled, but the district court denied the motion.

Mosqueda, but not Russa, elected to testify. Mosqueda testified that she went to work for Galvis, who owned a company called Sports Nutrition Center, doing payroll and other accounting-related administration. Mosqueda knew that Galvis's company received shipments to the Sheridan Street apartment, but she believed that the work they were doing was legal. At some point she began receiving the shipments and diluting with oil the products she received. At least some of the products would then be shipped out of the country. Mosqueda understood that the products being sold by Sports Nutrition Center were products for "people that did body sculpting or bodybuilding" and were legal "[v]itamins and hormones." Doc. 349 at 158-59. She testified that she knew the names of several of the substances the company sold, but that she did not know that those substances were controlled substances. Mosqueda thereafter renewed her motion for judgment of acquittal, and the district court denied it.

4

Mosqueda and Russa requested, and the district court gave, a "Theory of Defense" jury instruction, which read:

> Each Defendant contends that he or she is not guilty because he or she lacked knowledge that he or she possessed or manufactured a controlled substance . . . .  If you have a reasonable doubt as to whether a Defendant knew he or she was involved with a controlled substance, then you must find the Defendant not guilty.

Doc. 350 at 149.  During deliberations, the jury asked the district court a question:

> It's a Federal crime for anyone to possess a controlled substance . . . anabolic steroids are [a] 'control[led] substance[.]'  Does the defendant need to have known that anabolic steroids were a control[led] substance in order to be found guilty?

Doc. 195 at 2.  Without consulting the parties, the court responded:  "You are to follow the jury instructions as given."  *Id.*  The jury found Mosqueda and Russa guilty on all counts.

Russa and Mosqueda moved for a new trial, arguing that the district court erred when it answered the jury's question outside their presence and without consulting with defense counsel.  The district court acknowledged that it had erred, but ruled that the error was harmless and denied the defendants' motion.

As relevant to this appeal, the probation office calculated an advisory guidelines range for Mosqueda of 57 to 71 months' imprisonment.  At sentencing, Mosqueda sought a substantial downward variance, arguing that a guidelines-range sentence created an unwarranted sentencing disparity between her sentence and Galvis's.  Galvis, she argued, was the self-proclaimed leader of the conspiracy for

5

which she was found guilty and another subsequent conspiracy.  Galvis received a sentence of 46 months' imprisonment, and Mosqueda sought a lower sentence, highlighting the fact that she was involved in only one of the conspiracies and had cooperated with investigators after the search of the Sheridan Street apartment but before she was charged in federal court.  The district court acknowledged that Galvis was the "ringleader," Doc. 354 at 31, but found that giving Mosqueda the same sentence as Galvis created no unwarranted sentencing disparity.  Whereas Galvis assisted the government and pled guilty—so that the government dropped several charges against him and he received a number of sentencing reductions (including for acceptance of responsibility)—Mosqueda went to trial.  The district court sentenced Mosqueda to 46 months' imprisonment, an 11-month downward variance from the bottom of her guidelines range.  The court took into account the fact that she went to trial and played a supervisory role in the scheme, along with the facts that Mosqueda had medical challenges and no criminal history and that the proceedings had "caused significant issues" for her 18-year old son.  Doc. 354 at 31.

Mosqueda and Russa appealed.

## II.    DISCUSSION

On appeal Mosqueda challenges the district court's ruling that she could not join her codefendant's motion to suppress.  She and Russa challenge the district

court's decision to answer a jury question without their or their counsel's presence, arguing that the error was not harmless.  They argue that the district court should have said "yes" to the jury's question.  Mosqueda further argues that the error was not harmless because there was insufficient evidence at trial that she knew the steroids were a controlled substance.  Finally, Mosqueda argues that her sentence was substantively unreasonable because it failed to reflect the differences between her conduct and that of her codefendant Galvis.  We address these arguments in turn.

## A. The Motion to Suppress

We begin with Mosqueda's challenge to the district court's denial of her codefendant Soodak's motion to suppress.  The government responds that Mosqueda neither joined that motion nor filed one of her own, and therefore she cannot now challenge the district court's decision.  We agree.

A defendant must move to suppress evidence before trial.  Fed. R. Crim. P. 12(b)(3)(C).  If she fails to do so before the court's deadline for pretrial motions, the court nonetheless may entertain the motion if the defendant shows good cause. Fed. R. Crim. P. 12(c)(3).  "No good cause exists if the defendant had all the information necessary to bring a Rule 12(b) motion before the date set for pretrial motions, but failed to file it by that date." *United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) (internal quotations omitted); *see also Rakas v.*

*Illinois*, 439 U.S. 128, 134 (1978) ("There is no reason to think that a party whose rights have been infringed will not, if evidence is used against him, have ample motivation to move to suppress it."). And a defendant who fails to make a timely suppression motion cannot raise that claim for the first time on appeal. *United States v. Lall*, 607 F.3d 1277, 1288 (11th Cir. 2010).

Mosqueda had the opportunity, but failed, to file a motion to adopt Soodak's motion to suppress or file a motion to suppress of her own. She never attempted to show good cause to file a belated motion in the district court. As a result, she cannot now argue that evidence from the Sheridan Street apartment should have been suppressed. *See id.* We therefore do not consider Mosqueda's challenge to the district court's denial of Soodak's motion to suppress.[3]

## B. The Jury Question

Mosqueda and Russa argue that the district court erred in denying their motion for new trial.[4] They argue that the court's error in ensuring their presence

---

[3] In her reply brief, Mosqueda argues three reasons why she had good cause for not filing a motion to suppress or a motion to adopt Soodak's motion to suppress. First, the issue was preserved for appellate review when she orally requested to join Soodak's motion at the suppression hearing; second, she failed to file her own motion because she wanted to preserve her limited funds and the district court had denied Soodak's motion; and third, she proceeded in good faith. We generally do not consider issues raised for the first time in a party's reply brief. *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004). Moreover, the Federal Rules of Criminal Procedure require Mosqueda to show good cause to the district court, not to this Court. Fed. R. Crim. P. 12(c)(3). Even if we were to consider them, Mosqueda's arguments in her reply brief would not persuade us to reach a different result.

[4] We review a district court's denial of a motion for a new trial for an abuse of discretion. *United States v. Russo*, 717 F.2d 545, 550 (11th Cir. 1983). Under the abuse-of-discretion

when answering the jury's question prejudiced their defense.  Mosqueda and Russa

contend that, if their counsel had been consulted, counsel would have requested

that the district court answer the jury's question in the affirmative—that the jury

would have to find that each defendant "knew . . . she was involved with a

controlled substance."  Doc. 350 at 149.  They cite Chief Justice Roberts's

concurrence in *McFadden v. United States*, 135 S. Ct. 2298, 2307-08 (2015)

(Roberts, C.J., concurring), for the proposition that in controlled substances

offenses under 21 U.S.C. § 841(a)(1), knowledge that a substance is "controlled" is

an element of the offense that the government must prove.  Mosqueda further

argues that the error was not harmless because it went to the heart of her defense—

that she did not know the anabolic steroids were controlled substances.  We are not

persuaded by either argument.

　　First, Mosqueda and Russa are wrong that Chief Justice Roberts's opinion in

*McFadden* supports their assertion that the district court should have responded

"yes" to the jury's question whether the defendants "need[ed] to have known that

anabolic steroids were a control[led] substance in order to be found guilty."  Doc.

195 at 2.  Chief Justice Roberts opined that knowledge that a substance was

controlled "arguably" is required to sustain a conviction under § 841(a)(1),

---

standard, we must affirm unless we find that the district court has made a clear error of judgment or has applied the wrong legal standard. *United States v. DuBose*, 598 F.3d 726, 731 (11th Cir. 2010).

*McFadden*, 135 S. Ct. at 2308, but his was not the majority opinion. The majority opinion reasoned that "the knowledge requirement [of § 841(a)(1)] may also be met by showing that the defendant knew the identity of the substance he possessed." *Id.* at 2304 (majority opinion). The majority's statement was dicta, *see id.* at 2308 (Roberts, C.J., concurring), but as we have said before, "there is dicta, and then there is Supreme Court dicta." *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006).

In any event, even if we "cast aside" *McFadden*'s dicta, *id.* at 1325 (internal quotation marks omitted), we would not reverse because Mosqueda's and Russa's own "Theory of Defense" jury instruction, which the court gave, instructed that the jury could only convict if it found, beyond a reasonable doubt, that each defendant "knew . . . she was involved with a controlled substance." Doc. 350 at 149. The instruction therefore was a correct statement of the law under Chief Justice Roberts's narrow view of § 841(a)(1)'s knowledge requirement. The district court answered the jury's question by referring the jury to the instructions the court had given them. "We do not approve of any unjustified communication between the court and the jury without notifying counsel and therefore do not approve of the procedure followed by the trial judge in this case." *United States v. Bentacourt*, 734 F.2d 750, 759 (11th Cir. 1984). Indeed, the district court conceded that it had committed error by answering the jury's question outside the presence of the

10

defendants and their counsel.  Nevertheless, "the error was harmless" because "the jury had a complete copy of all charges in the jury room" and "could refer back to the charges and find the answers they needed," *id.*, answers that reflected the more exacting knowledge standard that the defendants advocated.

Second, we reject Mosqueda's argument that the district court's error prejudiced her defense because there was insufficient evidence to support a finding that she knew the substances were controlled substances.  *See United States v. Brantley*, 68 F.3d 1283, 1291 (11th Cir. 1995) (explaining that an error under Federal Rule of Criminal Procedure 43, which requires a defendant's presence at all stages of his trial, including a court's response to jury questions, is harmless "if the court takes sufficient precautions to ensure against prejudice to the defendant's interests").  Although made in the context of the denial of her motion for new trial,[5] Mosqueda made a freestanding sufficiency-of-the-evidence challenge.  We review *de novo* the sufficiency of the evidence, viewing the evidence in the light most favorable to the government and making all inferences and credibility determinations in favor of the government and the jury's verdict.  *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005).  We must affirm "unless, under no

---

[5] The government argues that the Court should disregard Mosqueda's argument because it was not adequately briefed.  We disagree.  Mosqueda adequately briefed the issue by "plainly and prominently" raising it in a separate section of her brief.  *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003); *see* Mosqueda Initial Br. at 30-38 (challenging the sufficiency of the evidence of knowledge under heading "Sufficiency of the Evidence").

11

reasonable construction of the evidence, could the jury have found the [defendant] guilty beyond a reasonable doubt." *Id.* To sustain a conviction for possession with intent to distribute under 21 U.S.C. § 841(a)(1), the government must prove knowing possession of a controlled substance with intent to distribute it. *United States v. Figueroa*, 720 F.2d 1239, 1241-42 n.1, 1244 (11th Cir. 1983). We assume for our purposes that Mosqueda is correct and that the government was required to prove she knew the substances at issue were controlled substances.

Mosqueda argues that the government's witnesses needed special training to discern whether the substances at issue were controlled substances, so there was no evidence that she, a layperson, would have that knowledge. Importantly, however, Mosqueda testified in her own defense. When a defendant elects to testify, a jury may disbelieve her statements and take those statements as substantive evidence of guilt. *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995); *see United States v. Garcia-Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009) (explaining that a jury is entitled to make credibility determinations and we assume the jury made these determinations in a way that supports the verdict). Mosqueda testified that she did not know the substances she handled were controlled substances. The jury was entitled to disbelieve her and take her testimony as evidence that she did have the requisite knowledge. *Brown*, 53 F.3d at 314. The jury's inference that Mosqueda knew the substances were controlled does not conflict with the government's

evidence—it is not a stretch to infer that a defendant engaging in a scheme with others to sell drugs would know the substances she was handling were illegal, even though trained experts uncovering the scheme would need to verify through testing the type of substance involved.

For these reasons, we are unpersuaded that the district court's error in answering the jury's question outside the presence of the parties prejudiced the parties.

## C. Mosqueda's Sentence

Lastly, Mosqueda contends that her sentence is substantively unreasonable because it is out of step with that of her codefendant Galvis. According to Mosqueda, Galvis—who founded Sports Nutrition Center, designed its business model, ordered the steroids from overseas, taught Mosqueda how to mix the substances, and continued engaging in unlawful activity after police searched the Sheridan Street apartment—was "significantly more culpable" yet received the same sentence she did, 46 months. Mosqueda Appellant's Br. at 38-39.

We review the reasonableness of a sentence under a deferential abuse of discretion standard, considering the totality of the circumstances and the sentencing factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 41 (2007). As relevant here, one factor the district court must consider is the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(6). The

13

party challenging a sentence bears the burden of proving the sentence is unreasonable. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

A district court imposes a substantively unreasonable sentence when it fails to afford consideration to relevant factors that were due significant weight, gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering the proper factors. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). Although generally the weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008), a district court commits a clear error of judgment when it "considers the proper factors but balances them unreasonably" and imposes a sentence that "does not achieve the purposes of sentencing as stated in § 3553(a)," *Irey*, 612 F.3d at 1189-90 (internal quotation marks omitted). We will vacate a sentence if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190.

We cannot agree with Mosqueda that the district court erred in sentencing her to 46 months' imprisonment, the same term her codefendant Galvis received. "Disparity between the sentences imposed on codefendants is generally not an

14

appropriate basis for relief on appeal." *United States v. Regueiro*, 240 F.3d 1321, 1325-26 (11th Cir. 2001).  This general rule reflects Congress's choice to enact the Sentencing Guidelines "to eliminate disparities in the sentences meted out to similarly situated defendants" rather than co-defendants in a single case.  *United States v. Chotas*, 968 F.2d 1193, 1197 (11th Cir. 1992).  "The guidelines, structured to account for relative culpability and differences in prior records of defendants, demonstrate that the Sentencing Commission fully anticipated sentencing disparity between defendants involved in the same offense."  *Id.*; *see also* 18 U.S.C. § 3553(a)(6) (instructing sentencing courts to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct").

Here, although Mosqueda argues that Galvis was more culpable, he pled guilty rather than proceeding to trial.  As a result, unlike in Mosqueda's case, several of the charges against him were dismissed and he received a reduction for acceptance of responsibility.  The district court took into account those circumstances just as it accounted for Mosqueda's unique circumstances.  On the one hand, she went to trial and played a supervisory role in the conspiracy; on the other hand, she had no criminal history, suffered medical issues, and had a son to care for.  We therefore see no occasion here to disturb our general rule that disparity between codefendants' sentences does not provide the basis for relief.

15

*See Williams*, 526 F.3d at 1322; *see Regueiro*, 240 F.3d at 1325-26.

## III.    CONCLUSION

For the reasons above, we affirm Mosqueda's conviction and sentence and Russa's conviction.

**AFFIRMED.**