629 A.2d 763

**Symcha SHPAK**

v.

**Sherri D. SCHERTLE aka Sherri D. Mitchell.**

**No. 599, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

June 7, 1993.

Revised and Refiled Sept. 3, 1993.

Certiorari Denied Dec. 17, 1993.

Arnold M. Weiner, argued (Bruce L. Mann, Mary E. Goulet and Hazel & Thomas, P.C., on the brief), Baltimore, for appellant.

Richard C.B. Woods, Baltimore and Charles J. Muskin, Glen Burnie, argued for appellee.

Argued before BISHOP, ROSALYN B. BELL * and CATHELL, JJ.

## ON MOTION FOR RECONSIDERATION

BISHOP, Judge.

Appellee, Sherri D. Schertle (Schertle), filed a complaint in the Circuit Court for Baltimore County against Appellant Symcha Shpak (Shpak), alleging that Shpak raped and molested her, and seeking damages in the amount of $2,000,000. Schertle filed an amended complaint alleging: assault (Count

---

* Bell, J., now retired, participated in the hearing and decision of this case while an active member of this Court; after being recalled pursuant to the Constitution of Maryland, Art. IV, sections 3A and 18(b), she also participated in the adoption of this opinion on the motion for reconsideration.

I), battery (Count II), intentional infliction of emotional distress (Count III), invasion of privacy (Count IV), and negligent infliction of emotional distress (Count V). Schertle later filed second and third amended complaints removing Counts IV and V, and increasing damages to $30,000,000. At the close of the evidence, the court granted Shpak's motion for judgment as to Count I, and denied Shpak's and Schertle's motions for judgment as to Counts II and III. The jury returned a verdict in favor of Schertle, and awarded her $200,000 compensatory damages, and $500,000 punitive damages. The court denied Shpak's motion for a new trial.

## Issues

Shpak raises five issues which we restate as follows:

I.   Did the trial court commit reversible error when it excluded evidence favorable to Shpak?

II.   Did the trial court commit reversible error by permitting Schertle's expert, Dr. Spodak, to testify concerning the credibility of Schertle's allegations of childhood sexual abuse?

III.   Did the trial court commit reversible error by admitting inflammatory character evidence reflecting adversely on Shpak?

IV.   Did the trial court commit reversible error when it refused to grant the continuance or preclude the testimony of Schertle's psychiatric expert, Dr. Spodak?

V.   Did the trial court commit reversible error when it gave certain jury instructions and refused others thereby creating an imbalance between Schertle's and Shpak's cases?

For the reasons discussed *infra*, we affirm.

## Facts

Schertle was born on August 24, 1968, and when she was "two or three" years of age, her parents separated. In 1974, when Schertle was six, Schertle's mother, Joan Mitchell (Mitchell), Schertle and her brother moved into a house with Shpak. Soon after, Schertle alleged Shpak molested her. He

fondled her and later engaged in vaginal intercourse. In January 1975, Schertle was sent to Saint Agnes Hospital because of uncontrollable vomiting. Shpak molested Schertle repeatedly until sometime in 1977, when she was in the fifth grade and able to fight back. Schertle did not tell anyone about the abuse because she was afraid Shpak would carry out his threat that, if she told anyone, he would not let her see her family. Mitchell and Shpak married in 1985.

When Schertle was twelve, she stole Shpak's Sears credit card and let friends charge anything they wanted. She claimed she did this because she was angry with Shpak. According to Mitchell, Schertle "manipulated" her beginning at age three, and began stealing and lying when she was about eleven or twelve. When Schertle was fourteen, she ran away from home, skipped school, and wrote checks on Mitchell's account without permission. Consequently, Mitchell sent Schertle to Lutheran Hospital. Schertle told others at the hospital that she was molested by Shpak. When Schertle was sixteen she married Charles Schertle, and with Mitchell's consent, moved in with Mitchell and Shpak. She stole checks from Shpak and Mitchell, including Mitchell's social security check. She stole other persons' checks and credit cards. In January 1988, Schertle was convicted in Howard County of theft and uttering of checks, and was subsequently convicted of similar charges in Baltimore County, Talbot County, and again in Howard County. At the time of trial, Schertle was incarcerated.

*Preparation for Trial:*

On August 21, 1987, Schertle filed a *pro se* lawsuit against Shpak claiming she was raped and molested by Shpak. Since no action was taken, the court later notified Schertle of contemplated dismissal pursuant to Rule 2–507. Schertle then hired an attorney, and after a hearing on August 4, 1989, the court agreed not to dismiss the complaint. With the assistance of her new attorney, Schertle filed an amended complaint alleging Counts I through V. On February 27, 1990, Schertle's attorney withdrew his appearance. Shpak then

filed a motion to dismiss alleging, *inter alia*, that Schertle failed to serve the complaint. The court denied his motion. Schertle hired attorney James Kraft (Kraft), who filed a second amended complaint. On August 17, 1990, Schertle filed a motion for continuance of the September 10, 1990 trial date for the reason that discovery was incomplete. The court granted the motion and scheduled trial on July 22, 1991. On January 11, 1991, Kraft withdrew his appearance. On May 26, 1991, Richard Woods (Woods) entered his appearance as Schertle's attorney and filed a third amended complaint alleging Counts I through III. Shpak filed a motion for sanctions against Schertle and the court scheduled a hearing for April 29, 1991. Schertle's husband wrote a letter to the court requesting a continuance of the hearing because Schertle was incarcerated at the time, and the court granted the continuance. Woods and counsel for Shpak filed a joint petition for a writ of *habeas corpus* so that Schertle would be brought from prison to be deposed, and to be evaluated by Dr. Spodak, Schertle's expert psychiatrist. Shpak later filed a motion for continuance for the reason that he was unable to depose Dr. Spodak. The court denied the motion. Prior to trial, Shpak filed a motion *in limine* seeking to preclude Dr. Spodak's testimony, and the trial judge denied the motion.

*Discussion*

*I.*

Shpak contends that the trial court committed reversible error when it excluded evidence favorable to Shpak. He maintains that the circuit court erred in precluding Maureen Johnson and Joan Shpak (Shpak's wife and Shertle's mother) from contradicting Shertle's testimony that she stole a $50.00 check from her mother to pay Maureen Fearens for a hair permanent Maureen had given to Shertle, and for which Joan Shpak had promised to pay. Shertle asserts, *inter alia*, that Shpak never established that Maureen Fearens and Maureen Johnson were the same person; that seems to be true. Assuming, however, that they were the same person, the trial court's rulings did not constitute reversible error. Maureen

Johnson was, in fact, permitted to testify that she did not know how to give permanents, did not give Shertle a permanent and, did not receive a $50.00 check from Shertle for giving Shertle a permanent. In view of this testimony, precluding Joan Shpak from also testifying to this collateral matter, particularly when there was no proffer that her testimony would be anything other than cumulative and there was a great deal of other testimony as to Schertle's veracity, does not require reversal.

Shpak's primary argument on the exclusion of evidence involves his assertion that Schertle put "motive" at issue when she claimed that Shpak's sexual molestation caused her to commit crimes. Shpak maintains that the court committed prejudicial error when it refused to allow evidence of Schertle's cocaine use because such evidence was crucial to his theory that Schertle's criminal conduct was motivated by her cocaine abuse and not Shpak's sexual molestation. We disagree. "[T]he admission or exclusion of evidence is a function of the trial court which, on appeal, is traditionally viewed with great latitude." *Ellsworth v. Sherne Lingerie, Inc.,* 60 Md. App. 104, 118, 481 A.2d 250 (1984), *rev'd on other grounds,* 303 Md. 581 (1985). "An appellate court will only reverse upon finding that the trial judge's determination was 'both manifestly wrong and substantially injurious.'" *Lomax v. Comptroller of the Treasury,* 88 Md.App. 50, 54, 591 A.2d 1311 (1991) (*quoting Paige v. Manuzak,* 57 Md.App. 621, 633, 471 A.2d 758 (1984)).

Schertle contends defense counsel's proffer was insufficient to preserve the issue of her alleged cocaine use for appellate review. Schertle maintains that defense counsel did not proffer that "even one witness . . . could testify that he or she had sold [her] cocaine, had seen [her] in possession of cocaine or had seen [her] use cocaine. Nor, most importantly, was there a proffer as to the time frame during which the alleged cocaine use took place." Accordingly, she asserts Shpak "simply provided no factual basis to demonstrate a

foundation that the proffered evidence was relevant to [her] longstanding emotional and mental problems."

Defense counsel proffered:

We have witnesses who would indicate that [Schertle] engaged in substantial usage of cocaine. The reason that I believe that that is germane to this particular case, Your Honor, is that in fact it would indicate a motivation for the thefts in which she has engaged....

Understanding that I was going to use it to tie-in with the checks and the rest of it.

For the foregoing reasons, we agree with Schertle that defense counsel's proffer of the anticipated testimony was insufficient. *Compare Jorgensen v. State,* 80 Md.App. 595, 601, 565 A.2d 371 (1989) (no proffer is needed where issue is clearly generated from the record, and what the examiner was trying to accomplish is obvious) *with Mack v. State,* 300 Md. 583, 603, 479 A.2d 1344 (1984) (requiring formal proffer of the contents and relevance of anticipated testimony). In a situation where evidence is admissible only for a limited purpose and carries with it the danger of unfair prejudice, counsel must expressly address that issue of unfair prejudice in the proffer. *See Brooks v. Daley,* 242 Md. 185, 192–94, 218 A.2d 184 (1965). Defense counsel clearly did not address this issue in the case *sub judice.*

As explained in 1 John H. Wigmore, *Evidence in Trials at Common Law* § 20a at 870 (1983):

Although an offer may be informal, it must still be informative, and sufficiently so. Thus, an informal offer must be "definite," "specific," and "intelligible" and cannot be "vague," "general," or "indefinite"; it must "clearly state" what a party intends to prove and cannot state "mere conclusions."

(Footnote omitted).

In *Fowler v. Benton,* 229 Md. 571, at 574, 185 A.2d 344 (1962), the Court stated:

A simple and effective manner of preserving for appellate review the correctness of the trial court's rulings when failing to admit offered testimony is for counsel to ask specific questions of a witness, and obtain a ruling by the court on each question (as a matter of practical procedure, if the court deems it desirable certain of the questions may be dictated to the court stenographer at the bench beyond the hearing of the jury); and, if the question itself does not disclose its relevancy, then counsel should call to the court's attention the nature of its materiality. Another easy and also effective method of obtaining appellate review not only of the immediate question asked but also those of a similar nature is, after an objection has been sustained to a question asked, to make a formal proffer of what the witness' testimony would be in answer to the question asked and those of a similar nature, place the proffer in the record, and obtain a ruling by the court on its admissibility.

(footnotes omitted) (quoted with approval in *Leitch v. Anne Arundel Co.,* 248 Md. 611, 616 n. 1, 237 A.2d 748 (1968)).

Defense counsel did not proffer that the witnesses would testify that any one of them sold cocaine to Schertle. Nor did counsel explain that the testimony would show that Schertle began using cocaine around the time she became involved in criminal activity—or more to the point, around the time she began to steal. There is nothing in the record to "indicate" that the witnesses had personal knowledge that Schertle *actually* used cocaine, or that she *actually* stole in order to purchase the cocaine, or of the cost of the cocaine. Even if Shpak's attorney had proffered that witnesses would testify that they had sold cocaine to Schertle, or that they had seen her actually use or purchase cocaine, or that they had personal knowledge that she stole in order to purchase cocaine, exclusion of the proffered evidence would not have been error. This is so because the record here simply does not require the admission of such testimony, even if the proffer had been more adequate.

■ Although Schertle conceded that she had committed numerous thefts, the trial court permitted her to be impeached repeatedly with specific evidence of these same thefts. She was never asked about cocaine use and defense counsel did not proffer that the "cocaine evidence" was further impeachment; nor does Shpak make such a claim on appeal. Rather the proffer and appellate claim is that the "cocaine evidence" was admissible to "indicate motivation for the thefts." Evidence of prior crimes and bad acts, like "substantial usage of cocaine," is only admissible as substantive evidence if it: (1) "has special relevance, *i.e.*, is substantially relevant to some contested [material] issue in the case and is not offered to prove criminal character," *Harris v. State,* 324 Md. 490, 500, 597 A.2d 956 (1991); (2) is proved by "clear and convincing evidence," *Cross v. State,* 282 Md. 468, 472, 386 A.2d 757 (1978) and (3) "has probative force that substantially outweighs its potential for unfair prejudice." *Harris,* 324 Md. at 500, 597 A.2d 956. *See generally* 5 Lynn McLain, Maryland Practice § 404.5, at 352–357 (1987) and authorities cited therein. Moreover, the "party offering the evidence . . . must shoulder the burden of demonstrating relevance other than criminal character, as well as the burden of demonstrating that the probative value substantially outweighs the potential for unfair prejudice." *Harris,* 324 Md. at 500–501, 597 A.2d 956.

Shpak failed to meet that burden. First, it is not at all clear that the issue to which the "cocaine evidence" was proffered as relevant is a *contested* or *material* issue in this case. Shpak did *not* proffer that witnesses would testify that Schertle's cocaine use motivated her to lie and claim Shpak abused her or even that the "cocaine evidence" "indicate[d] a motivation" for false charges of abuse. Such proffers would have described evidence relevant to a contested and material issue in the case. The proffer here, however, was only that the "cocaine evidence" was relevant to Schertle's "motivation for the thefts." If asked, Schertle might have conceded that, on occasion, she stole to purchase cocaine and attribute this activity, like her other crimes, to Shpak's abuse. Moreover, even if the facts alluded to were regarded as contested and

material to this case, the proffer utterly fails to suggest, let alone demonstrate, that Shpak could meet his burden of proving those facts by "clear and convincing evidence." *Cross,* 282 Md. at 478, 386 A.2d 757. There was no hint in the proffer, or even in the appellate briefs, that Shpak intended to introduce evidence that Schertle had been charged with any crime involving cocaine; "an uncharged crime must be established by clear and convincing evidence." *Lodowski v. State,* 302 Md. 691, 728, 490 A.2d 1228 (1985), *cert. denied,* 475 U.S. 1086, 106 S.Ct. 1469, 89 L.Ed.2d 725 (1986). Finally, although the precise basis for the circuit court's decision to exclude the testimony is not clear, there was certainly ground for excluding this inflammatory testimony as unfairly prejudicial. *Brooks, supra,* 242 Md. at p. 194, 218 A.2d 184. Thus, Shpak also failed to meet his burden of demonstrating that "the probative value of the 'cocaine testimony' substantially outweighs its potential for unfair prejudice." *Harris,* 324 Md. at 501, 597 A.2d 956.

We do not hold, in this case, that evidence of drug use is never admissible. In *Shepard v. United States,* 290 U.S. 96, at 105–06, 54 S.Ct. 22, 78 L.Ed. 196 (1933), Justice Cardozo stated what we believe is an excellent principle to follow: "when the risk of confusion is so great as to upset the balance of advantage the evidence goes out."

In sum, in view of the highly inflammatory and prejudicial nature of this type of evidence, we find that the court did not abuse its discretion when it refused to admit the testimony into evidence. The proffer did not establish sufficiently the relationship between Schertle's alleged cocaine abuse and her subsequent thefts as an adult. The jury did not have a proper basis upon which to conclude that Schertle's alleged cocaine abuse was the real motivation for her to steal, and therefore, the nexus between the cocaine and thefts was merely speculative. Failure to establish such a relationship renders the evidence of Schertle's cocaine use collateral to the central issue and thus inadmissible. *See* 6 *McLain, supra,* § 607.4.

## II.

Shpak next contends that the court committed reversible error when it permitted Dr. Spodak to testify concerning the credibility of Schertle's allegations of childhood abuse. Shpak asserts that the trial court committed reversible error in permitting Dr. Spodak to testify that Schertle was a victim of child abuse. Shpak, however, did not object to the question eliciting this testimony when it was made. This is reflected in the following excerpt from the trial transcript:

Q. Now, based upon all the things that you have testified to and all the things that you have done, do you have an opinion within a reasonable degree of medical certainty as to whether or not this Plaintiff's present emotional and mental state is a result of early childhood abuse?

[Shpak's counsel:] Objection.

The Court: Overruled.

A. Yes. I do.

[Q.] And what is that opinion, sir?

A. It is my opinion with a reasonable degree of medical certainty that her current emotional state is a result of early childhood abuse.

Shpak's counsel objected to the first and unobjectionable question, asking if Dr. Spodak had an opinion; the circuit court properly overruled that objection. Shpak's counsel never objected to the second and crucial question, "what is that opinion." Nor did Shpak's counsel ever lodge a "continuing objection." *See* Rule 2–517(b). Accordingly, any argument with regard to this testimony has not been preserved for appellate review. *See* Rule 8–131.

If an objection to this evidence had been preserved, it is not at all clear that, as Shpak claims, *Bohnert v. State*, 312 Md. 266, 539 A.2d 657 (1988), precludes its admission. *Bohnert* held that there was no adequate basis for a similar opinion of a social worker because that opinion was "founded only on what [the child] said had occurred," 312 Md. at 276, 539 A.2d 657, and that such an opinion was inadmissible as a matter of law because, "[i]n the circumstances here," it represented

testimony of an expert vouching for the child's credibility. 312 Md. at 279, 539 A.2d 657. In contrast, Dr. Spodak's opinion was based on extensive objective tests and past medical records in addition to what Schertle told him. Thus, "the circumstances here" are very different than *Bohnert.* Because Shpak, unlike Bohnert, *see* 312 Md. at 271 n. 1, 539 A.2d 657, did not preserve any objection to this testimony, however, we do not here determine *Bohnert's* reach.

■ Shpak also argues that the court erred when it allowed Dr. Spodak to testify that Schertle's testimony was "consistent" and "showed variation in the time frame, but no significant variation in the content," and that the "inconsistent versions of her story were attributable to most people's general inability to remember exact dates and the specific details of events." We disagree.

Dr. Spodak testified that he performed a psychiatric evaluation of Schertle which included a four-part procedure: a psychiatric history, a mental status examination, psychological tests, and review of medical records. Defense counsel did not object to the admission of records from Lutheran Hospital, Saint Agnes Hospital, and another doctor's progress and discharge notes that were reviewed by Dr. Spodak as a part of the evaluation. Dr. Spodak testified without objection that as a result of his psychiatric evaluation of Schertle, it was his opinion that she had a mental disorder. Schertle's counsel then asked:

> In this case, sir, did you find any information or form any opinions that led you to conclude that [Schertle] was displaying the same types of symptoms as people who had suffered sexual abuse at any early age?

The court sustained defense counsel's objection. Schertle's counsel then asked, "What, if any, conclusions did you come to, sir, regarding the cause of [Schertle's mental disorder]?" The court overruled counsel's objection, and Dr. Spodak testified at length about his conclusions. This evidence was properly admitted to show the basis for Dr. Spodak's opinion of the ultimate issue in the case which was whether Schertle's prob-

lems were the result of childhood abuse. *See State Health Dep't v. Walker*, 238 Md. 512, 520, 209 A.2d 555 (1965) (the opinion of an expert must be based on facts, proved or assumed, sufficient to form a basis for an opinion); *see also Cider Barrel Mobile Home Court v. Eader*, 287 Md. 571, 584, 414 A.2d 1246 (1980) (an expert can express an opinion of fact even though this opinion goes straight to the ultimate factual issue that the jury must decide); *Andrews v. Andrews*, 242 Md. 143, 153, 218 A.2d 194 (1966).

Dr. Spodak then proceeded to explain that:

What I learned from [Schertle] after reviewing the records is that there are some real inconsistencies in the history that she provided. However, the question is where the inconsistencies lie. The inconsistencies I found in terms of admission look into the sequence of events and the things happened and the circumstances and what to say and who was gone and things—

The court overruled defense counsel's objection to that testimony, and Dr. Spodak went on to testify about the inconsistencies in the records, and concluded that "she had suffered a traumatic event and that traumatic event started around age six consistent with the medical history and the impact has continued on through her adulthood." Defense counsel did not preserve this issue for appellate review since he did not object to the admission of Schertle's medical records. *See* Rule 8–131(a). Moreover, even if the issue was preserved, Dr. Spodak's testimony was not that Schertle was lying. *See Globe Security Sys. v. Sterling*, 79 Md.App. 303, 308, 556 A.2d 731 (1979) (no expert can testify that a person was testifying truthfully when he said a certain thing). Dr. Spodak may as well have used the term "typical," and not "consistent." He merely testified that her ability to remember events and circumstances was typical of someone who suffered a childhood trauma.

### III.

Shpak contends that the court erred when it allowed testimony of Lynn Shpak, Roland Wommack, and Donna

Gosnell. He maintains that the testimony of these three witnesses was improper character evidence which reflected adversely on Shpak. We disagree.

Shpak failed to object to the testimony of Lynn Shpak and Roland Wommack, and therefore, he waived his objection to the evidence. *See* Rule 2–517. Further, Shpak's description of Gosnell's testimony as character evidence is incorrect. The record makes clear that the court allowed Gosnell to testify on direct examination only that Shpak threatened her.

[Plaintiff:] Ma'am, when was the last time that you talked to Mr. Shpak?

[Gosnell:] I had not seen him for 20 years. He called me last summer.

[Plaintiff:] And what, if anything, did he say to you when he called?

Mr. May: Objection.

THE COURT: Overruled.

[Gosnell:] He said that if I testified against him that he was—he threatened me. He said that he was going to bring up something about a previous relationship.

Gosnell's testimony was properly admitted as evidence of spoliation. *See Meyer v. McDonnell,* 40 Md.App. 524, 533, 392 A.2d 1129 (1978) (evidence of a party attempting to intimidate or improperly influence a witness has probative value with respect to that party's consciousness of the weakness of the case).

Specific instances of ... spoliation or suppression of evidence, and other efforts at "covering up" are admissible as evidence of guilty knowledge. This evidence is admitted as supporting an inference that the actor must have been guilty of the misdeed with which he or she is charged, or he or she would not have taken those steps. If a party has ... threatened a witness, proof of these acts will be admissible.

That proof will give rise not only to an inference that the testimony of the ... suppressed evidence would have been unfavorable to that party, but also that the party has "guilty

knowledge" and believes that the missing evidence would have been unfavorable.

5 McLain, *supra,* § 404.10; *see also McCormick on Evidence* § 265 (1992) ("wrongdoing by the party in connection with its case amounting to an obstruction of justice is also commonly regarded as an admission by conduct").

Counsel for Shpak maintained during oral argument that the *Meyer* case stands for the proposition that spoliation evidence is admissible only if the underlying testimony is relevant. To support his position, counsel argued that, under *Meyer,* written documents must be relevant to be admissible. Counsel cited *McCormick,* as quoted in *Meyer,* which in pertinent part refers to "destruction or concealment of *relevant* documents or objects[.]" 40 Md.App. at 532, 392 A.2d 1129. Thus, he contended, it stands to reason that *Meyer* also requires the underlying oral testimony to be relevant. The entire paragraph from *McCormick* in which the above words appear reads:

> "As might be expected, wrongdoing by the party in connection with his case, amounting to an obstruction of justice is also commonly regarded as an admission by conduct. By resorting to wrongful devices he is said to give ground for believing that he thinks his case is weak and not to be won by fair means. Accordingly, a party's false statement about the matter in litigation, whether before suit or on the stand, his fabrication of false documents, his undue pressure, by bribery or intimidation or other means, to influence a witness to testify for him or to avoid testifying, his destruction or concealment of relevant documents or objects, his attempt to corrupt the jury, his hiding or transferring property in anticipation of judgment—all these are instances of this type of admission by conduct." McCormick, *Evidence* § 273 (2d ed. 1972).

*Id.*

*Meyer* makes clear that an attempt by a party to an action to intimidate or threaten a witness "is admissible as tending to show his consciousness of the weakness of his

case...." *Id.* at 533, 392 A.2d 1129. *Meyer* does not require the underlying testimony to be otherwise relevant; rather, it provides that testimony of spoliation is, in and of itself, substantive evidence in support of the other party's claim. The trial court in the case *sub judice* allowed Gosnell to testify only as to Shpak's threats. Thus, her testimony was properly admitted as tending to show Shpak's state of mind.

Counsel also cited *United States v. Cole*, 670 F.2d 35 (5th Cir.1982), which, he argued, provides that, if the witness's underlying substantive evidence is not relevant, then any evidence of spoliation is inadmissible since it may be prejudicial to the party against whom the evidence is being admitted. In *Cole*, defendants were charged with mail fraud and conspiracy, and they appealed the trial court's refusal to allow testimony of three witnesses concerning alleged intimidation by law enforcement officials. The Court of Appeals affirmed and referred to several factors upon which the trial court correctly based its decision. The factors, *inter alia*, were that the testimony was cumulative since the defense questioned several other witnesses about possible Government intimidation, and that such testimony "would divert the jury's attention to the collateral issue of whether the Government had properly conducted its questioning of witnesses who had no knowledge of the crimes with which defendants were finally charged."

The defendants, in *Cole*, were allowed to question all witnesses against them about possible Government intimidation; only one defense witness's testimony was excluded, and he had no knowledge of the charges made against the defendants. In the case *sub judice*, the testimony was not cumulative. Gosnell was the only witness to testify concerning any attempt by Shpak to intimidate a witness. Further, in *Cole*, the issue of whether the Government intimidated witnesses while conducting its investigation was collateral to the issue of defendants' involvement in fraud and conspiracy. Here, Shpak's credibility was not a collateral issue; indeed, it went to the heart of his defense. The jury had to decide who was more 'believable' since the only witnesses to the alleged child molestation were

the alleged parties involved. Shpak's state of mind as to "his consciousness of the weakness of his case" was not a collateral issue. *Meyer*, 40 Md.App. at 533, 392 A.2d 1129. The evidence of Shpak's conduct was properly admitted into evidence.

## *IV.*

Shpak next contends that the court erred when it (1) denied Shpak's request for a continuance; (2) admitted Dr. Spodak's testimony; and, (3) denied counsel's motion for a new trial. Again, we disagree.

Rule 2–508 provides in pertinent part:

(a) **Generally.**—On motion of any party or on its own initiative, the court may continue a trial or other proceeding as justice may require.

(b) **Discovery Not Completed.**—When an action has been assigned a trial date, the trial shall not be continued on the ground that discovery has not yet been completed, except for good cause shown.

Accordingly, "[w]hether to grant a continuance is in the sound discretion of the trial court, and unless he acts arbitrarily in the exercise of that discretion, his action will not be reviewed on appeal." *Thanos v. Mitchell*, 220 Md. 389, 392, 152 A.2d 833 (1959); *see also Reaser v. Reaser*, 62 Md.App. 643, 648, 490 A.2d 1315 (1985).

We hold that the court did not abuse its discretion when it denied Shpak's request for a continuance. Under Rule 2–508, the trial court has wide latitude in determining whether to grant a continuance. The facts in the record *sub judice* simply do not give rise to the exceptional circumstances which warrant the need for a continuance.

On July 4, 1991, Shpak and Schertle filed a joint petition for writ of *habeas corpus* so that Schertle would be brought from prison to be evaluated by Dr. Spodak, "the expert psychiatrist retained by the Plaintiff to examine Sherri D. Schertle." The examination was to occur on June 27, 1991. Shpak's attorney excised the provision for a psychiatric examination by his own

expert. On July 3, 1991, Schertle provided Shpak with supplemental answers naming Dr. Spodak as Schertle's expert witness. Shpak deposed Dr. Spodak on July 15, 1991, and on July 18, 1991, Shpak filed a motion for continuance.

Shpak's counsel did not object to Dr. Spodak's expert testimony. Thus, the issue as to whether the court erred when it refused counsel's request to exclude Dr. Spodak's testimony was waived. *See* Rules 2-517(a), 8-131(a). The fact that Shpak subsequently filed a motion *in limine* did not eliminate the need for counsel to object. *See Collier v. Eagle–Picher Indus., Inc.,* 86 Md.App. 38, 62, 585 A.2d 256, *cert. denied,* 323 Md. 33, 591 A.2d 249 (1991).

Finally, Shpak claims he was entitled to a new trial because the court abused its discretion by refusing to grant a continuance, admitting Dr. Spodak's testimony into evidence, and denying him a fair trial. Since we determined that the court properly ruled against Shpak as to these contentions, we conclude that the court did not abuse its discretion when it determined that he was not entitled to a new trial. *See Buck v. Cam's Broadloom Rugs, Inc.,* 328 Md. 51, 57–62, 612 A.2d 1294 (1992).

## V.

Shpak next complains that the court committed reversible error when it allowed Schertle's instruction on spoliation, and refused Shpak's proposed instruction on *falsus in uno, falsus in omnibus.* He contends that the instructions were imbalanced and unfair. Specifically, he claims that the spoliation instruction was unjustified because the court admitted Gosnell's testimony only as an admission against interest, and that the court overlooked Schertle's numerous inconsistencies and fabrications which justified Shpak's *falsus in uno, falsus in omnibus* instruction. We disagree and explain.

Schertle's witness Gosnell testified on direct examination that she was threatened by Shpak.

[Counsel]: Ma'am, when was the last time that you talked to Mr. Shpak?

[Gosnell]:  I had not seen him for 20 years.  He called me last summer.

[Counsel]:  And what, if anything, did he say to you when he called?

[Defense counsel]:  Objection.

THE COURT:  Overruled.

[Gosnell]:  He said that if I testified against him that he was—he threatened me.  He said that he was going to bring up something about a previous relationship.

The court instructed the jury that:

If you find that a party tried to intimate or to influence witnesses, you may consider the conduct as an indication of consciousness by that party that his or her case is weak or unfounded.

Rule 2–520(c) provides:

The court may instruct the jury, orally or in writing or both, by granting requested instructions, by giving instructions of its own, or by combining any of these methods.  The court need not grant a requested instruction if the matter is *fairly covered* by instructions actually given.

(Emphasis added).  "A litigant is only entitled to have his jury instruction presented to the jury where his instruction is a correct exposition of the law *and* there is testimony in the case to support it." *Baublitz v. Henz,* 73 Md.App. 538, 547–48, 535 A.2d 497 (1988).  Thus, the only questions for the court were (1) was counsel's request an accurate statement of applicable law;  and (2) was the issue that the requested instruction addresses generated by the evidence. *See Wegad v. Howard Street Jewelers, Inc.,* 326 Md. 409, 414, 605 A.2d 123 (1992); *see also Meyer,* 40 Md.App. at 533, 392 A.2d 1129 (under Maryland law, a party attempting to intimidate or improperly influence a witness has probative value with respect to that party's consciousness of the weakness of the case and a jury should be so instructed).

We conclude that the court properly instructed the jury on spoliation.  The instruction, under *Meyer,* was an

accurate statement of the applicable law and was generated by the evidence. Moreover, proposed instruction number ten, *falsus in uno, falsus in omnibus,* was fairly covered in the court's general instruction on witness credibility. Shpak proposed the following instruction:

A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something which is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

The court instructed the jury:

In determining whether a witness should be believed you should carefully judge all of the testimony and evidence and the circumstances under which each witness has testified. You should consider the following: ... was the witness' testimony supported or contradicted by other evidence? ...

You may believe all, part or none of the testimony of any witness....

From time to time a party or witness to the case has been cross examined with respect to sworn testimony in a pretrial deposition. If you find that a party or witness in this case before testifying at the trial testified by way of deposition concerning any material matter in this case and that the deposition testimony of the party or witness was materially different from what the party or witness has said on the

witness stand, then the difference in testimony may be considered by you as a factor in estimating what weight should be given to all or any part of the testimony of the party or witness at the trial.

Counsel's proposed instruction was fairly covered in the court's general instruction on witness credibility, and therefore, there was no imbalance or unfairness to Shpak.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

ROSALYN B. BELL, Judge, concurring.

With respect to the result reached by the majority, I concur. I agree with the majority's conclusion that defense counsel did not make a sufficient proffer to establish a relationship between "Schertle's alleged cocaine abuse and her subsequent thefts as an adult." The majority has not, however, focused on the more important aspect, that this failure to establish such a relationship renders the evidence of Schertle's cocaine use collateral to the central issue and thus is inadmissible. *See* L. McLain, *Maryland Evidence.* § 607.4 (1987). While Shpak asserts that the evidence of Schertle's cocaine use goes to the issue of Schertle's motive to testify falsely, he does not indicate how this relieves him from liability. Indeed, Shpak's request for the admission of cocaine use by Schertle may backfire against Shpak because the testimony of Dr. Spodak, as it is entered in the record, highlights the fact that the abuse by Shpak formed the basis of Schertle's problems as an adult. That abuse could also include cocaine use.

When viewed against the backdrop of this basis for Dr. Spodak's conclusions, in which he attributed Schertle's criminal behavior to the early sexual abuse, the issue of her use of cocaine later in life becomes a "red Herring." Dr. Spodak's conclusions were based on data encompassing the period of Schertle's life beginning with the original sexual abuse at age six and the continuing of that sexual abuse through her early adolescent years. The abuse predates any alleged cocaine use to such an extent that the use of cocaine later in her life was

all but irrelevant to the true issue in the case, which was that Shpak's sexual abuse of Schertle over a period of nine years caused her dysfunctional criminal behavior. By the same token, it is also inconsistent for Shpak to claim that the thefts were motivated by the alleged cocaine use.

Even if the evidence of cocaine use were relevant, it would be admissible only for the limited purpose of calculating the amount of damages Shpak owes Schertle and does not alter Shpak's liability. Thus, under any circumstances, the decision on liability would stand and it would only be the damages that would be affected.

CATCHELL, Judge, concurring.

I concur that the proffer as to appellant's evidence of lack of causation, *i.e.*, that appellee's criminal conduct was caused by the need for funds to support a cocaine habit rather than the alleged sexual abuse, was insufficient.

I do not concur, however, with certain discussions in the other concurrence relating to that proffer. As I perceive it, the basis for that discussion is that the proffer would not, even if sufficiently made, relieve "[Shpak] from liability." I disagree. While the evidence was inconsistent with the claims made by Schertle, I fail to see how it is inconsistent with Shpak's position.

This was a civil case. As I understand the jury's verdict, it found for the appellee on the second count of the amended complaint, battery, and on the third count, intentional infliction of emotional distress. It has long been established that:

> The burden is upon the plaintiff to prove *that the particular consequence for* which a pecuniary finding is sought is the *direct result of a wrongful act ... by the defendant.*

*Symington v. Graham,* 165 Md. 441, 449, 169 A. 316 (1933) (emphasis added). As I view the evidence, it overwhelmingly indicated that appellant had sexually abused the appellee. Nevertheless, as I perceive the defense's case, Shpak sought to introduce the evidence as to cocaine usage *not to prove that the sexual abuse did not occur,* but to establish that even if it

had occurred, the damage alleged by Schertle was not caused by the sexual abuse, but instead resulted from her need to finance her cocaine use. Had I been a juror and had the cocaine evidence been admitted, I may well have thought that this defense theory was indeed a "red herring." But, it may very well have been to the actual jurors both relevant and probative as to Shpak's "lack of causation" defense. Appellant was not attempting to establish a relationship between the sexual abuse and appellee's criminal acts, but was trying to establish that the criminal acts of appellee were caused by something other than the alleged abuse. Shpak was attacking the relationship between the alleged abuse and the criminal conduct by offering a different cause for the subsequent conduct. Appellant was offering this evidence to counter the wealth of evidence presented by Dr. Spodak that the sexual abuse caused Schertle's later criminal conduct. While I agree that the evidence, especially that of Dr. Spodak, supporting Schertle's position that her later criminality was caused by the early sexual abuse is strong, I cannot agree that evidence to the contrary, had it been admitted, would have been "all but irrelevant." It may have or it may not have been depending upon its weight and the credibility of those who might have presented it. I also see nothing inconsistent with a civil defendant's attempt to prove that the damages incurred by the plaintiff did not result from the defendant's wrongful acts.

Additionally, I do not agree that a causation challenge, such as that sought to be made by appellant, would be limited only to "calculating" damages. If Schertle's criminality was caused by a factor other than the sexual abuse, *i.e.*, the financing of a cocaine habit, then, to the extent her damages are based on her criminality, she would not be entitled to recover unless the cocaine use itself could be connected to the abuse.

I find it necessary to comment further. While the "bothering" of an appellate judge is normally of little consequence or importance, I note that it is bothersome to contemplate the tens of thousands of men and women who are or have been imprisoned as a result of criminal conduct that they, or others, believe was caused or influenced by factors that occurred

during their formative years. The appellee's theory of her case, condensed to its operative mode, is: I committed criminal acts as a result of sexual victimization as a child. Thus, I have a cause of action for which my damage is to be compensation for the penalty, imprisonment, I paid as an adult for these criminal acts. As stated in the other concurrence, "the true issue in the case, ... was that Shpak's sexual abuse of Schertle over a period of nine years caused her dysfunctional criminal behavior." Concurring opinion, Bell, J., 97 Md.App. at 229, 629 A.2d at 775.

With increasing frequency, suits and other proceedings are being brought based upon sexual offenses allegedly occurring years, sometimes decades, earlier. These litigants in many instances rightfully seek and are able to prove damages for physical injury and emotional distress imposed upon them by a parent's or a stepparent's abuse. Appellee, in the case *sub judice,* goes a step further. She attempts to recover damages based in part on the punishment received for her criminal acts on the theory that what occurred in her childhood caused her to behave criminally. This is, as far as I am aware, a unique case of first impression.

I suggest that we should at least hesitate in considering the balancing of causes and defenses when contemplating a decision that may be cited as authority, not only for sex abuse causation, but for other character affecting conduct that may have occurred during a criminal's formative years. For instance, may alcoholic parents or stepparents, battling parents, corporal punishment parents, or neglectful parents be sued by their adult criminal children and be required to compensate their children for the punishment that the children receive for their criminal acts? May the State be sued by prisoners for allowing the poverty that everyone agrees is one of the causative factors of crime? May school boards and teachers be sued when lack of education is a causative factor in criminal conduct? As I understand the literature, those parental and societal factors, and many others, may influence the later criminal conduct of the children of such parents and victims of such societal problems. Where does it end?

Appellant did not adequately raise the very viability of suits such as the one *sub judice.* Thus, the viability of permitting criminals to sue parents and others for damages based upon the criminal penalties paid by them is not directly at issue before us. I would suggest, however, that serious public policy considerations may exist when legislatively created penalties are subsequently assuaged by money damages. I note that not every victim of sexual abuse later commits criminal acts, nor does every sex abuse victim that later commits criminal acts do so because of the prior abuse. To permit damages to incorporate, directly or indirectly, compensation to the criminal for the penalties imposed on her or him not only dilutes the punishment, but diverts responsibility away from the criminal and reduces the element of choice inherent in choosing to commit a criminal act.

In cases such as the one *sub judice,* that may be brought by criminals against those allegedly causing their criminalization,[1] there are, as I see it, two primary defenses: (1) The acts were not committed; and/or (2) the later criminal conduct was not caused by the alleged acts even if they were committed. The language used in the other concurrence would, as I see it, inappropriately limit the ability of a defendant to challenge the evidence offered by the plaintiff to link the conduct occurring during childhood to the damage alleged—criminalization. That evidence discussed as not being relevant and as being inconsistent is, in my view, completely relevant to, and entirely consistent with one of the defenses, *i.e.,* lack of causation. Had the proffer been sufficient, I would have voted to reverse.

---

1. While the torts of battery and intentional infliction of emotional distress are not new, I respectfully suggest that the theory that a criminal may be compensated for her criminality if she can establish a causal connection between it and the earlier torts is a new theory.